The final case on for argument today is United States v. Faltine. Good morning, your honors. May it please the court? Oh, I guess it's the afternoon probably by now, right? I don't have a watch on. Okay. Three minutes. Last but not least. Okay, good afternoon. Last but not least. My name is Jillian Harrington and I was assigned by this court along with Martin Siegel to represent Clyde Faltine on this direct appeal. I did not represent Mr. Faltine in the district court below. As the court is, of course, aware, we presented two issues for review by the court. The first issue that I'd like to address today is whether Mr. Faltine's conviction of the conspiracy charge was sufficient to prove his guilt beyond a reasonable doubt. To sum up this argument in one sentence, maybe two since lawyers are not prone to speaking in one sentence, but based on the record that's before this court that was in the district court, the government failed to present sufficient evidence to prove beyond a reasonable doubt that Mr. Faltine was a member of the narcotics conspiracy that was alleged here. What they did prove, if anything, is that there was this narcotics conspiracy that was dealing in cocaine and marijuana, and I believe there were some allegations of crack that didn't come in to this case. What they did prove, if anything, is that Mr. Faltine was a buyer or a customer. But where they fell short was in proving that, apart from being a customer, that he was an actual member of the alleged conspiracy. Can I just go over some of the evidence that was presented by the government about this? This is kind of the mutual dependence or mutual trust relationship between conspirators, the Brock case. As I understand it, part of the time he was buying on consignment, so he was being fronted the drugs, that when his cash was stolen, Voisin, I don't know how you pronounce his name, his cousin Gonzales, another cooperator I think in the case, he bought a safe for him to keep his cash. Yes, Your Honor. There was evidence that they didn't even weigh the drugs. They just trusted each other that the weight of the drugs was right. They didn't count the money when it was being exchanged because they trusted each other. They had a longstanding relationship where there were a lot of drugs being sold and purchased. How is that not sufficient to meet that Brock issue, that kind of evidence? Well, I'll answer it, yes, yes, yes, yes. That is all evidence that was presented by the government in this case. But where the government fell short was in establishing that Mr. Faltine, apart from being a customer, that he assisted in the operation at all or in the organization. All the evidence proved was that, yes, he was, all of those things could be, we could argue, and we do argue that all of those things reflect the fact that he was a customer, a good customer. A customer who then sells on the drugs to other people for the benefit, among others, of his supplier. The issue is, and I understand you have a multiple conspiracies issue which is slightly different, but that there is a conspiracy in which that at least involves Voisin and Gonzalez and your client to sell, that your client will be selling drugs and they're going to be basically helping him by doing things like giving him the drugs on consignment, giving him extending credit, being understanding when he comes up short with cash and so on. Why isn't that evidence of a conspiracy to sell these drugs forward to Mr. Faltine's customers? Well, where I respectfully disagree with you and the district court which came to the same conclusion was that he was, that Mr. Faltine was selling these drugs for the benefit of Voisin or Voisin. How do you say it? Voisin. Okay, I apologize. But Voisin is, it's not, he's not selling it, nobody sells drugs purely for the benefit of somebody else. They sell drugs to make money. But they're also, I think of it almost the reverse, right? Voisin is also participating in this for himself but also for the benefit of Faltine. It's in their mutual interest that Faltine succeed in selling drugs, isn't it? Yes, Your Honor, but an argument can be made that that's the case in any buyer-seller relationship. No, not if the buyer is a user, for example, rather than a forward seller, not if the buyer is someone who on one occasion buys from this supplier but also buys from another supplier and another supplier and doesn't have any ongoing relationship with anybody. Well, we don't know for certain, although there was no, I'm sorry, I didn't mean to interrupt, Your Honor. No, but the point is, and he may have other suppliers. Right, we don't, that's what I was going to say. That also doesn't make him not a conspirator with Voisin if in their relationship they are operating in a relationship of trust. In other words, you don't have to be like an employee with a badge that says I work for McDonald's or I work for Voisin so long as you have this joint relationship to make the business prosper. Yes and no, although I agree with you that a mutual trust had obviously developed which led to the consignment arrangement that they had. I think there are other factors that we can point to to show that he wasn't part of the organization. That may be, but isn't that what makes it a jury question, whether there's a conspiracy or not? The jury could infer one thing or it could infer something else. Yes, but the reason that we're here is that we say that the inferences that they made were not founded upon the evidence that was presented by the government. And as Your Honor said, Your Honor makes the argument, as I said, the district court made the same argument that there was some reciprocity here, which really brings Mr. Faltine into the organization. And we would argue that that's not true. Mr. Voisin had a product to sell. Faltine purchased that product. Whether he used it himself or whether he turned around and sold it to other people doesn't matter to Voisin because Voisin is selling it to him one way or the other, Your Honor. No, he's not because it wouldn't make any sense. That would be true if it was a small quantity, but obviously he's not selling this for personal use. And if it were for personal use, it wouldn't make any sense. The arrangement is that they're all benefited by furthering the sales. That's the argument. But in Brock, he didn't buy all of that for personal use. There is some argument in Brock that some of it was for personal use and the rest of it he was selling and he was getting it from multiple people, and multiple people within that same organization Brock was purchasing. Dickerson, I believe, is the defendant who was actually in that case. So in this case, I think we have a situation where we have a seller and we have a buyer. Can I ask just one question? Of course. It's not exactly relevant to the merits here, but as I understand it, you're only challenging the conspiracy. Yes. So one way or the other, he's going to spend three years in jail on the substantive count. Yes, Your Honor. Yes, Your Honor. I didn't feel that it was appropriate. I understand. Given the evidence. I'm trying to make sure that there was not something I was missing that would lead to jail. No, I appreciate that, Your Honor. And to sum up the argument is, again, to go back to we have a buyer and a seller. And in Brock, Mr. Dickerson was purchasing from several different people inside and outside of that organization. And I don't think it's appropriate in this case that just because the evidence presented by the government was that Mr. Faltine was only purchasing from Voisin, that we rely on the fact that he was a willing participant in some agreement, some conspiracy that they're trying to prove here, to distribute these narcotics. Just because this was the only one that they presented evidence about doesn't mean it was the only place that he was getting those drugs. And if he was purchasing them from Voisin, everybody brought up the mutual trust situation. That's something that grows over time. And just because he came back to him multiple times doesn't put him inside of that circle. Well, you may not have been conspiring on the first deal, and you might have that argument. But as it continues out over time, and you get the added benefits of Voisin saying, all right, well, you had problems handling the money, and obviously I've got an interest in that money. So here's a safe to keep the money safe so that you can not lose it and get it back to me or not end up short and have to work extra hard and sell more product in order to make up the difference. But at the same time, we can argue that if he was truly a member of the organization of the narcotics distribution conspiracy, that when those drugs and that money was stolen, that the debt would have been forgiven. But instead, he repaid for that anyway. And a lot of these are symptoms of a relationship that had developed. I have a nice relationship with the bagel store in my neighborhood. It doesn't mean that I'm part of their organization. There's a consignment shop in my town where I may bring a sweater. If they sell that sweater and they give me money, granted it's not a controlled substance, I'm not now a part of their organization, even if I do this many times over the years. You both made money off selling that product, and you did it together. So you may have had an agreement that you would both participate in selling the sweater to the customer. That's all that's required. The law doesn't prohibit being a member of the voisin organization. It prohibits conspiring together with someone else to break the law. Yes, and the argument is that there were, although they may have conspired to break the distribution or the, I'm sorry, the possession because Mr. Faltine purchased those drugs from Mr. Voisin, there's no evidence to prove that he joined into this agreement with Mr. Voisin and or others. You don't need others, it could have just been the two of them. There's no proof that they joined together to form this agreement. It was a buyer-seller relationship. Mr. Voisin had a product to sell. Mr. Faltine, according to the government, had a need for that product, whether it was for his own use or for the sale to others, and that's where we went. I know that I'm over my time, so I will rely on my brief. Thank you very much, Your Honors. Thank you. Oh, that's right, you have not reserved time for rebuttal, so. Thank you, Ms. Harrington. We will hear from Ms. Nestor. Good afternoon. May it please the Court. My name is Julia Nestor, and I represent the government in this case. There was sufficient evidence, and remember, the standard here is sufficiency of the evidence. There was sufficient evidence presented at trial for the jury to convict Mr. Faltine in participating in a cocaine and a marijuana conspiracy. Contrary to the appellant's contention, the evidence presented at trial constituted much more than a mere buyer-seller relationship. This was, as Your Honors have pointed out, a prolonged cooperation lasting from 2009 to 2012. This was – there was mutual trust here. Voisin at numerous points testified that he trusted Faltine, that this was a relationship that was developed over time. He testified that he trusted that Faltine would distribute drugs. In fact, there was testimony from Voisin that when he would receive drugs, including marijuana, he would almost force those drugs on Faltine as a requirement of being part of his disagreement because he needed somebody to move the marijuana, not just to move the cocaine. He also testified, as Your Honors pointed out, that he provided a safe so that Faltine could keep his money safe. He provided advice to Faltine about keeping his money safe because Faltine was sometimes careless with his money. These are all to protect Voisin's own interests in the drug conspiracy. And there's also standardized mode of dealing, which is required under the law. They would have the transactions at the same locations, at the same places. Sales on credit, as Your Honors pointed out. The fronting, the credit sales, seems like an awful lot of these drug sales are fronted sales because of the cost of the drugs, $27,000 for an ounce of cocaine, something like that. So aren't most of those sales now fronted sales because who's got $27,000 in cash? You have to wait until you sell it until you actually can pay the seller. So is that always evidence of a mutual trust or a beneficial relationship that reflects on a conspiracy? Your Honor, I would argue that it actually is in most cases because there has to be a trust developed in order for somebody to front the drugs in the first place. There has to be some understanding that you're going to get the money back. Because you're not, I mean, of course, you could get at lower quantities. Or maybe fear. I'm sorry? Maybe fear instead of trust. In certain circumstances that may be true. That wasn't the case here. There's absolutely no evidence of fear. All the phone recordings were of a friendly relationship. In fact, these two had a relationship outside, a business relationship that had nothing to do with drugs as well. So this was really a relationship where Mr. Faltine was asking for larger quantities because he had larger wholesale customers. And Mr. Voisin was actually able to provide that because his amounts had gone up. So in this case, I don't think it applies. I don't want to speak across all cases. But I think in this case, it is very much the case that the actual, the sales on credit were very important to the conspiratorial endeavor here. And I also think that, you know, it wasn't just half a kilo at a time. It wasn't just a quarter of a kilo. This was a kilo to two kilos buckets of marijuana that he was trusting him with. And he owed Mr. Voisin money at the time Mr. Voisin was arrested, as the record reflects. So there's clearly that. And as Your Honors pointed out, the quantity of cocaine here, Mr. Voisin estimated 40 to 50 kilograms conservatively, because it is difficult to keep track of these types of things, 40 to 50 pounds of marijuana conservatively. These are not the Brock amounts of drugs that we're talking about. These are not hand-to-hand sales. He's selling to wholesale customers. Your Honors, the evidence, unless Your Honors have any other questions, I think the evidence establishes that Mr. Voisin and Mr. Faltine were involved in a conspiratorial relationship, not a mere buyer-seller relationship. And certainly, sufficiency of the evidence standard is met here. Thank you. Thank you. Thank you, Ms. Nestle. Thank you both. And we'll reserve decision in this case. And I will ask the clerk, please, to adjourn court. Court is adjourned.